**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
**BUFFALO DIVISION**

| | | |
|---|---|---|
| OSVALDO AGUILAR, | ) | |
| | ) | CIVIL COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:21-cv-234 |
| CAPITAL MANAGEMENT | ) | |
| HOLDINGS, LLC, and DEBT | ) | |
| MANAGEMENT PARTNERS, LLC, | ) | |
| | ) | |
| | ) | **JURY DEMAND** |
| Defendants. | ) | |

**COMPLAINT**

Now come OSVALDO AGUILAR ("Plaintiff"), complaining as to CAPITAL

MANAGEMENT HOLDINGS, LLC ("CMH") and DEBT MANAGEMENT PARTNERS,

LLC ("DMP" and, collectively, "Defendants"), as follows:

**JURISDICTION**

1.      Subject matter jurisdiction is conferred upon this Court by

28 U.S.C. § 1331, as the action arises under the laws of the United States.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant

resides in this District.

**PARTIES**

3.      Plaintiff is a natural person residing in California.

4.      Defendant CMH is a New York limited liability company with its

principal place of business in this District.

[ 1 ]

5.      Defendant CMH is a third-party debt collector whose primary purpose is the collection of defaulted consumer accounts.

6.      Defendant DMP is a Delaware limited liability company with its principal place of business at 200 John James Audubon Parkway, Suite 304, Amherst, NY 14228. Defendant DMP is a purchaser of defaulted consumer accounts.

7.      Defendant DMP has, as its sole business purpose, the collection of those defaulted consumer accounts.

BACKGROUND

8.      Plaintiff obtained a loan from LoanMe, Inc.

9.      Plaintiff used the proceeds of this loan for personal and household purposes, such as paying his bills and buying groceries.

10.     Upon information and belief, the amount of the loan was approximately $3,000.

11.     Plaintiff did not use the proceeds of the loan for any business or commercial purpose.

12.     After the account went into default, LoanMe, Inc. sold it.  Defendant DMP purchased the account.

13.     Upon information and belief, Defendant DMP then hired Defendant CMH to collect upon the account.

14.     In the alternative, Defendant DMP sold the account to Defendant CMH while retaining control over the collection process.

15.     Upon information and belief, the contract between Defendant DMP and Defendant CMH establishes a principal-agent relationship with DMP being the principal and CMH being the agent.

16.     According to Defendant DMP's website, "[o]ur Chief Operating Officer is a 25 year veteran of the collection industry; he has overseen thousands of employees, managed direct placements from major banks, coordinated purchasing and liquidation for hedge funds, and has sat on the boards of numerous professional trade organizations. Overseeing all aspects of account management, he maintains consistency and quality control at every step of the process."

17.     Upon information and belief, Defendant DMP retained the right to control Defendant CMH's collection activities, including (but not limited to) by doing the following:

        a.     Reserving the right to repurchase any account that DMP determines is involved in pending or threatened litigation or that otherwise involves DMP's interests;

        b.     Requiring CMH to maintain a compliance management system ("CMS") that meets DMP's standards;

        c.     Reserving the right to "recall" any and all accounts affected by any failure on the part of CMH to maintain or utilize the CMS;

        d.     Reserving the right to require CMH to immediately withdraw accounts placed with or sold to third party debt collection agencies;

e.   Requiring CMH to maintain recordings of its telephone calls with consumers for three years;

f.   Requiring CMH to notify DMP of consumer complaints and lawsuits; and

g.   Requiring CMH to include an identical CMS provision in any contract by which CMH sells accounts further downstream.

18.   Although Defendant DMP had the right to control Defendant CMH's actions, it failed to prevent Defendant CMH from taking the actions described in this Complaint.

19.   In fact, Defendant DMP almost exclusively hires third-party debt collectors that it knows regularly violate the FDCPA.

20.   On information, reference, and belief, Defendant DMP knew that Defendant CMH, specifically, regularly violates the FDCPA.

21.   Defendant DMP knew or should have known of the numerous complaints that consumers have lodged with the Consumer Financial Protection Bureau ("CFPB") regarding Defendant CMH, which also does business under the name "Elite Debt Brokers," such as:

a.   Contacting employer regarding debt and failing to disclose debt collector status.  (Complaint No. 3894909);

b.   Threatening to contact third parties and to personally serve a lawsuit it did not intend to bring.  (Complaint No. 3894947);

c.   Failing to verify debt when requested.  (Complaint No. 3865000);

[ 4 ]

22.     Defendant DMP has known or should have known, since at latest March of 2019, that Defendant CMH employs a clearly-violative script in all initial calls to consumers.  A copy of this script is attached hereto as Exhibit 1.

23.     On information and belief, Defendant DMP prefers to hire debt collectors that it knows commit these types of FDCPA violations because this increases its return on investment.

24.     In or about mid-November, 2020, Defendant CMH placed a call to Plaintiff.

25.     This call displayed on Plaintiff's caller ID as originating from within his own California area code.  On information and belief, CMH, which is located in Western New York, employed the technique commonly known as "spoofing" to accomplish this.

26.     Plaintiff does not ordinarily answer calls from unknown numbers, but because of the displayed area code Plaintiff elected to answer this call.

27.     On this call, Defendant CMH's representative stated that they had sent someone to serve him with papers at his home, but that there had been no answer when their server knocked on the door.

28.     This statement was false.  Plaintiff's home is always occupied by at least one person, and no one had attempted to serve any papers there.

29.     When Plaintiff asked why someone had attempted to serve him with papers, he was informed that a lawsuit was about to be brought against him regarding the LoanMe account.

[ 5 ]

30.     On reference and belief, Defendants do not pursue legal actions against individual debtors and, on information and belief, they had no intention of pursuing a legal action against Plaintiff.

31.     Defendant CMH's representative further stated that because Plaintiff had made no payments on the LoanMe account, Plaintiff's conduct constituted criminal fraud.

32.     That statement was also false.

33.     At no point on this call did Defendant CMH's representative meaningfully identify himself or his employer, nor did Defendant CMH's representative state that he was a debt collector and that any information gathered would be used for that purpose.

34.     Intimidated by Defendant CMH's false threats, Plaintiff agreed to enter into a payment plan under which he would pay $1,200 on Wednesday, November 18, 2020, and a further $1,200 on Wednesday, November 25 in order to settle the debt.

35.     At no point did Defendant CMH obtain Plaintiff's signature, whether electronic or otherwise, on any agreement memorializing the terms of this payment plan.

36.     At no point did Defendant CMH provide a copy of the terms of this payment plan to Plaintiff, despite Plaintiff's explicit request that it do so.

37.     Indeed, at no point did Defendant CMH communicate with Plaintiff in writing by any method, whether by mail, email, or fax, or otherwise.

38.     Specifically, at no point has Defendant CMH sent to Plaintiff a copy of the statutory notice commonly known as a "1692g" notice.

39.     The two scheduled payments of $1,200 and $1,200 were successfully taken
from Plaintiff's bank account on November 18, 2020 and November 25, 2020.

40.     Defendants' intimidation tactics caused Plaintiff anxiety, worry, and
emotional distress, and they resulted in his agreeing to make payments without a full
understanding of the circumstances or a realistic evaluation of his own interests.

41.     This action follows.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

42.     Plaintiff realleges the paragraphs above as though fully set forth herein.

43.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA
because he incurred a loans used to provide for his own everyday subsistence.

44.     Defendant CMH is a "debt collector" as defined by § 1692a(6) of the
FDCPA because the principal purpose of its business is the collection of debts, and
because it uses the instrumentalities of interstate commerce to do so.

45.     In the alternative, Defendant CMH, is a "debt collector" under § 1692(a)(6)
because it regularly collects or attempt to collect, directly or indirectly, debts owed or
due or asserted to be owed or due another.

46.     Defendant DMP is a "debt collector" as defined by § 1692a(6) of the
FDCPA because the principal purpose of its business is the collection of debts, and
because it uses the instrumentalities of interstate commerce to do so.  Specifically,
Plaintiff states that the sole purpose of DMP is to purchase portfolios of defaulted
consumer debts and to collect those debts.

[ 7 ]

47.     Defendant CMH's actions violated the following provisions of the

FDCPA:

    a.  § 1692d(6) by placing a telephone call to Plaintiff without a meaningful

       disclosure of CMH's identity;

    b.  § 1692e(7) by falsely stating that Plaintiff had committed criminal fraud;

    c.  § 1692e(5) and § 1692e(10) by falsely representing that CMH intended to

       bring suit against Plaintiff to secure repayment of the debt;

    d.  § 1692e(5), § 1692e(10), § 1692e(13) by falsely stating that it had sent and

       would continue sending someone to serve Plaintiff;

    e.  § 1692e(10) and 1692e, generally, by employing the method known as

       "spoofing" to conceal the true origin of CMH's call to Plaintiff in order to

       deceive him into answering the call;

    f.  §  1692e(11) by failing to disclose in the initial communication that the call

       was from a debt collector; that the debt collector was attempting to collect

       a debt; and that any information obtained would be used for that purpose;

    g.  § 1692g(a) by failing to send any written notice to the consumer within

       five days of the initial communication containing the information

       specified in § 1692g(a)(3)–(5); and

46.     Defendant CMH is directly and/or vicariously liable for the actions of its

employees.

47.     Defendant DMP is liable under the FDCPA because it is a debt collector,

and is therefore responsible for Defendant CMH's actions taken on its behalf to collect

its debts. *See Barbato v. Greystone All., LLC,* 916 F.3d 260, 261 (3d Cir. 2019) ("[A]n entity that otherwise meets the 'principal purpose' definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting."); *see also Mullery v. JTM Capital Mgmt., Ltd. Liab. Co.,* No. 18-CV-549, 2019 U.S. Dist. LEXIS 83139, at *9 (W.D.N.Y. May 16, 2019).

48.     Further, Defendant DMP is vicariously liable for Defendant CMH's actions under traditional agency principles, as Defendant DMP is the principal and Defendant CMH is the agent, and the latter's actions were taken within the scope of the agency relationship.

### COUNT II – VIOLATIONS OF THE ELECTRONIC FUND TRANSFERS ACT

49.     Plaintiff realleges the paragraphs above as though fully set forth herein.

50.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1693a(6) of the EFTA.

51.     Defendant CMH is a "person" as defined by 12 C.F.R. § 1005.2(j).

52.     The electronic fund transfer from Plaintiff's account initiated by Defendant CMH pursuant to the payment plan constituted a "preauthorized electronic fund transfer" under 15 U.S.C. § 1693a(10) because the payments under such payment plan were authorized in advance to occur once per week.

53.     The EFTA, pursuant to 15 U.S.C. § 1693e(a), provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

[ 9 ]

54.     Defendant CMH violated 15 U.S.C. § 1693e(a) when it initiated a preauthorized electronic fund transfer from Plaintiff's account without having first obtained written authorization for such transfer from Plaintiff.

55.     Defendant CMH violated 15 U.S.C. § 1693e(a) when it initiated a preauthorized electronic fund transfer from Plaintiff's account without having first provided Plaintiff with a copy of a written authorization for such transfer provided to Global by Plaintiff.

WHEREFORE, Plaintiff prays for judgment as follows:

a.     Holding Defendants jointly and severally liable for violations of the FDCPA, and holding Defendant CMH liable for violations of the EFTA;

b.     Awarding Plaintiff statutory damages of $1,000 as provided under 15 U.S.C. § 1693m(a)(2)(A);

c.     Awarding Plaintiff statutory damages of $1,000 as provided under 15 U.S.C. § 1692k(a)(2)(A);

d.     Awarding Plaintiff actual damages as provided under 15 U.S.C. § 1693m(a)(1) and 15 U.S.C. § 1692k(a)(1);

e.     Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1693m(a)(3) and 15 U.S.C. § 1692k(a)(3);

f.     Awarding Plaintiff the costs of this action;

g.     Awarding any other relief as this Honorable Court deems just and appropriate.

**A TRIAL BY JURY IS DEMANDED.**

[ 10 ]

Dated:  February 9, 2021

By:  s/ Geoffrey Parker

Geoffrey Parker (0096049)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 927-5980
gparker@hiltonparker.com
*Attorney for Plaintiff*